**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ERICK TAYLOR**                                         **CIVIL ACTION**

**VERSUS**                                                      **No. 20-3180**

**JESSIE LEBLANC, ET AL.**                        **SECTION I**

## ORDER & REASONS

Before the Court is defendant Jessie LeBlanc's[1] ("LeBlanc") motion[2] to dismiss plaintiff Erick Taylor's Third Amended and Supplemental Complaint[3] (the "amended complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Taylor opposes[4] the motion. LeBlanc filed a reply[5] to that opposition and Taylor filed a surreply.[6] As explained *infra*, the Court grants the motion, dismissing Taylor's federal law claims with prejudice and his state law defamation claim without prejudice.

To be clear, though, the Court dismisses the federal claims with prejudice only because precedent compels it to do so. This pretrial "victory" for LeBlanc should *not*

---

[1] LeBlanc is sued "in her official and individual capacities." R. Doc. No. 73, at 1. However, Taylor has not offered any argument that the state is responsible for LeBlanc's actions; indeed, he has already voluntarily dismissed his claims against the State. That concession seems incompatible with any argument that LeBlanc is somehow liable in her official capacity. Regardless, the Court need not reach this issue as it dismisses the claims against LeBlanc for reasons that apply with equal force to individual and official capacity claims.

[2] R. Doc. No. 74.

[3] R. Doc. No. 73.

[4] R. Doc. No. 75.

[5] R. Doc. No. 77.

[6] R. Doc. No. 81.

1

be seen as a vindication or an exculpation. Her conduct is a stain on the state judiciary and far below what is justifiably expected of a judicial officer.

An impartial judiciary is part of the bedrock of American democracy. But actual impartiality is not enough to maintain the judiciary's legitimacy, its most vital possession. A judge's impartiality and freedom from bias must be beyond question. All persons should rightfully expect and believe, without hesitation, that when they walk into a courtroom, they will be setting foot on a level playing field. LeBlanc's actions will give skeptics reason to doubt that belief. That is devastating.

## I.

Defendant LeBlanc is a former Judge of the 23rd Judicial District Court of the State of Louisiana, a district comprised of Ascension, St. James, and Assumption Parishes.[7] Taylor is a deputy in the Assumption Parish Sheriff's Office.[8] Former Assumption Parish Chief Deputy Bruce Prejean was his "superior."[9]

While on the bench, LeBlanc engaged in an extramarital affair with Prejean.[10] On February 27, 2020,[11] well after the affair ended, the Baton Rouge Advocate circulated a story about LeBlanc, which detailed the affair.[12]

---

[7] R. Doc. No. 73, at 1–3 ¶¶ 1, 8. The Court draws the facts it recounts from the amended complaint, accepting them as true for purposes of the instant motion.
[8] R. Doc. No. 73, at 2 ¶ 7.
[9] *Id.* at 2 ¶ 3.
[10] *Id.*
[11] Taylor's amended complaint claims that the article ran March 5, 2020. *Id.* at 5 ¶ 29. But the article itself (which Taylor attached as an exhibit to his original complaint) is clearly dated February 27, 2020. R. Doc. No. 1-1, at 1. This contradiction is irrelevant to the Court's resolution of the instant motion.
[12] R. Doc. No. 73, at 5 ¶¶ 29–30; *see* R. Doc. No. 1-1.

LeBlanc's affair with Prejean ended in 2016.[13]  In December 2018, though, LeBlanc became aware that Prejean was carrying on a *separate* affair with a courthouse employee who LeBlanc believed was African-American.[14]  That revelation set off an angry text message conversation between her and Prejean.[15]  During that conversation, LeBlanc referred to *Taylor* as a "dirty cop," a "thug n*****," and a "n*****."[16]

Taylor became aware of these comments on or around February 20, 2020 when Prejean told him about the impending article.[17]  And, according to the article, LeBlanc admitted that she had sent the text messages and apologized for them during a televised mid-February 2020 interview with WAFB.[18]

---

[13] R. Doc. No. 1-1, at 4.

[14] *Id.*; *id.* at 6.

[15] *Id.* at 3, 6–7.

[16] R. Doc. No. 73, at 2 ¶ 4; 5 ¶ 29.  The amended complaint contradicts itself as to whether the words "thug" and "n*****" were used disjunctively or as a single phrase. *See id.*  While the difference is conceivably material to the question of whether the statement was the sort that can be defamatory, the Court does not reach that issue and it consequently need not address the contradiction.

[17] *Id.* at 5–6 ¶ 31.

[18] R. Doc. No. 1-1, at 4–5.  In his opposition to the pending motion to dismiss, Taylor makes numerous allegations about the substance of the interview and LeBlanc's comments during it—claiming, for example, that LeBlanc did not retract her description of Taylor as a 'dirty cop.' *See* R. Doc. No. 75, at 10.  But those allegations are nowhere to be found in Taylor's amended complaint, which only briefly mentions the interview.  R. Doc. No. 73, at 6 ¶ 34.  And they go well beyond the passing description of the interview offered in the *Advocate* article.  R. Doc. No. 1-1, at 4–5.  While the inclusion or omission of these allegations is not outcome determinative, the Court finds it appropriate to explain why, were a motion to amend the complaint actually before it, it would deny the motion (besides its futility).

According to Taylor, the impact of LeBlanc's comments on his ability to perform his work has been significant.  On May 23, 2020, Taylor assisted in a traffic stop.[19]  At the scene, a suspect told Taylor: "I will stand right here and watch you because I don't trust you.  That Judge already said that you were dirty and she's gonna [sic] get your ass."[20]  A few days later, Taylor assisted with the execution of a narcotics search at a residence.[21]  After the search ended, two subjects called Taylor a "dirty cop" and told him that "the suspect revealed in the search would be out of jail soon because that judge said that [Taylor] was a 'dirty cop.'"[22]  Similarly, on June 4, 2020, Taylor responded to a disturbance call.[23]  During the incident, the suspect "told . . . Taylor, 'What are you going to do?  The Judge called you a n***** and you didn't do anything.'"[24]

Eventually, "the levels of harassment and disdain [Taylor] experienced from the community while working within the Narcotics Division of the [Sheriff's Office]" proved to be too much, and he "was moved from narcotics to patrol."[25]

And Taylor's problems with LeBlanc following her resignation were not limited to his professional life.  Sometime after her February 2020 resignation, "LeBlanc took on the representation of the mother of [Taylor's] child in a custody and child support

---

[19] R. Doc. No. 73, at 6 ¶ 35.
[20] *Id.*
[21] *Id.* at 6 ¶ 36.
[22] *Id.*
[23] *Id.* at 6 ¶ 37.
[24] *Id.*
[25] *Id.* at 7 ¶ 39.

matter against" him.[26]   Taylor claims, conclusorily, "that assuming the representation . . . was an absolute conflict of interest" and was done "to continue to harass" him.[27]

Taylor explains that, all told, the "entire ordeal has detrimentally effected [his] ability to perform his job duties" and "has caused [him] to suffer emotional distress," as well as "embarrassment and humiliation."[28]  He adds that this has "caused [him] to seek medical attention for the emotional effects that have flowed from having to dealing [sic] with the embarrassment and humiliation," though he offers no detail about his efforts to obtain medical attention or any treatment that occurred.[29]  He does note, however, that in March 2021, "after he submitted an application for a Special Officer Commission to join a Louisiana Office of State Police Task Force, [he] was denied involvement due to his having to seek medical treatment for the affects that were caused to him by" LeBlanc.[30]

But Taylor's problems with LeBlanc predate the *Advocate* story.  "[O]n August 7, 2019, . . . LeBlanc issued a bench warrant for . . . [Taylor] in the criminal case of State v. Jennifer Leonard, Case No. 152,696, Assumption Parish, State of Louisiana, for what . . . LeBlanc felt was [his] failure to appear as a material witness."[31]  Taylor

---

[26] *Id.* at 7 ¶ 40.

[27] *Id.* at 7 ¶ 41.

[28] *Id.* at 6–7 ¶ 38.

[29] *Id.*

[30] *Id.* at 7 ¶ 42.  Taylor has not raised an employment discrimination claim relating to this alleged incident, nor does he detail the matter further.

[31] *Id.* at 4 ¶ 20.  LeBlanc attached what she describes as a transcript of the relevant proceeding to a Court-ordered reply to Taylor's opposition.  R. Doc. No. 77-1.  Because the hearing is explicitly referenced in Taylor's amended complaint and is, by his own

alleges that LeBlanc did this despite the fact he had informed the District Attorney's Office a month earlier that "he would be out at a Narcotics Officers Association training conference."[32]

Taylor appeared before LeBlanc during an August 8, 2019 hearing "with respect to the bench warrant."[33]  "During the hearing . . . LeBlanc stated on the record that she felt . . . Taylor was going to 'do what he wanted to do, it didn't matter what [she] said.'"[34]  "LeBlanc also released a statement read on the record, in view of the parties, that the Assumption Parish Sheriff [sic] Office had no credibility in her courtroom."[35]

On August 20, 2019, LeBlanc emailed Sheriff Falcon and others "questioning . . . Taylor's credibility."[36]  Two days later, in an email, "Sheriff Falcon took issue with . . . LeBlanc's act of questioning . . . Taylor's credibility."[37]  LeBlanc emailed Sheriff

---

account, central to his claims, R. Doc. No. 75, at 8, and because Taylor does not challenge the legitimacy of the transcript, the Court could likely consider the transcript for purposes of the instant 12(b)(6) motion.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  The Court need not reach the transcript, though, because it concludes that, assuming *arguendo* the hearing went as described in Taylor's amended complaint, dismissal of the federal claims is still appropriate.

[32] R. Doc. No. 73, at 4 ¶ 21.

[33] *Id.* at 4 ¶ 23.

[34] *Id.* at 5 ¶ 24.

[35] *Id.* at 5 ¶ 25.

[36] *Id.* at 5 ¶ 26.

[37] *Id.*

6

Falcon again on September 3, 2019, "rescinding her questioning of . . . Taylor's credibility."[38]  At that point, Taylor "felt that all was fine with the stated parties."[39]

Another incident occurred in November 2019.  That month, "Taylor executed a traffic stop wherein he ultimately found the operator of the motor vehicle was found [sic] to have illegal narcotics within her possession."[40]  Shortly thereafter, he "submitted a warrant request to then Judge . . . LeBlanc with respect to the discovery of the narcotics that was revealed during the traffic stop"[41] and "submitted the retrieved narcotics to the Louisiana State Police for analysis."[42]

That same day, Taylor "received an SMS text message from . . . LeBlanc advising that either his request for a warrant or the factual basis that he presented within his request for a warrant contained information or material that was 'Insufficient to establish probable cause.'"[43]  Taylor responded to LeBlanc's text message, writing back "Yes ma'am."[44]

Later that day, "Assumption Parish [Sheriff] Leland Falcon contacted . . . LeBlanc inquiring as to why she was denying the warrant request, as everything appeared to have been in order."[45]  In an apparent response to this inquiry, LeBlanc

---

[38] *Id.* at 5 ¶ 27.
[39] *Id.* at 5 ¶ 28.  This statement is hard to square with Taylor's allegations regarding a November 2019 incident, discussed *infra* and raised earlier in his amended complaint.
[40] *Id.* at 3 ¶ 12.
[41] *Id.* at 3 ¶ 13.
[42] *Id.* at 3 ¶ 14.
[43] *Id.* at 3 ¶ 15.
[44] *Id.* at 4 ¶ 16.
[45] *Id.* at 4 ¶ 17.

texted Taylor once more, advising him that "[i]t is within [her] discretion as to whether probable cause exist [sic]."[46]  Perplexed, Taylor responded "[y]es ma'am I completely understand."[47]

According to Taylor, the *Advocate* article "contained a blurb stating that in December of 2019 Sheriff Falcon issued a memorandum advising that he felt . . . LeBlanc '. . . demonstrates an apparent bias towards Lieutenant Erick Taylor who serves in my Narcotics Division.'"[48]  According to Taylor, "this revelation severely impacted [his] ability . . . to perform his Assumption Parish job duties."[49]

Taylor's amended complaint lists four counts.  The first alleges that LeBlanc violated 42 U.S.C. § 1983 by intentionally taking actions that "constituted defamation and/or libel and were inspired by racial prejudice."[50]  It does not identify the source of the allegedly violated rights.  The second count is identical except that it alleges that those same actions constituted a "violation of the Fourteenth Amendment," though it does not further explain that claim.[51]  In the instant motion, LeBlanc noted

---

[46] *Id.* at 4 ¶ 18.

[47] *Id.* at 4 ¶¶ 18–19.

[48] *Id.* at 6 ¶ 32.  The Court assumes Taylor means that Falcon claimed LeBlanc was biased against Taylor.  The Court's acceptance or rejection of this allegation is immaterial to its disposition of this case.  Nonetheless, the Court notes that the allegation is directly contradicted and disproven by the article itself, which Taylor attached to his original complaint and upon which he relies heavily.  R. Doc. No. 1-1.  The article, in fact, contains *no mention of any such statement by Falcon.  See id.* Given the obviousness of the misrepresentation, and counsel's previously mentioned confusion about the date of the article's publication, the Court will assume the misstatement was an error.

[49] R. Doc. No. 73, at 6 ¶ 33.

[50] *Id.* at 7–8 ¶¶ 43–45.

[51] *Id.* at 8 ¶¶ 46–48.

8

that the violation alleged in the second count is "only actionable through Section 1983."[52]  Taylor's opposition did not dispute this, instead treating his claim as arising under Section 1983 for a violation of the Fourteenth Amendment.

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law."  *Colson v. Grohman*, 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)).  "It is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere."  *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).  In light of this precedent, as well as the parties' treatment of counts one and two as a single merged claim, the Court will assume the two counts are in fact one and address them accordingly.  The amended complaint is also silent as to the nature of Taylor's Fourteenth Amendment claim.  But, while Taylor's initial opposition to the instant motion was ambiguous as to whether his claim sounded in due process or equal protection, Taylor's counsel clarified during an August 12, 2021 status conference that the claim implicates only a violation of Taylor's due process rights and not that he was treated differently from others in violation of the Equal Protection Clause.[53]

Taylor's third count alleges that the same actions constitute defamation and/or libel under Louisiana law.[54]

---

[52] R. Doc. No. 74-1, at 6.
[53] R. Doc. No. 80, at 1.
[54] R. Doc. No. 73, at 8 ¶¶ 49–50.

9

The fourth 'count' of Taylor's amended complaint is titled "Waiver of Judicial Immunity" and argues that a Seventh Circuit case from 1979 dictates that LeBlanc is not entitled to judicial immunity for her actions.[55]   As explained in detail *infra*, LeBlanc agrees that judicial immunity does not apply to her actions except those taken in her role as a judge.  And Taylor's counsel conceded during the August 12, 2021 status conference that judicial immunity protects those actions LeBlanc took from the bench.[56] While the Court will address the extent of LeBlanc's judicial immunity in its resolution of Taylor's substantive claims, there is nothing else for it to do with Count 4.

## II.

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has

---

[55] *Id.* at 8–9 ¶¶ 51–54.
[56] R. Doc. No. 80, at 1.

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 16, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (alteration in original)).

## III.

### *Judicial Immunity*

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Accordingly, [it] is not overcome by allegations of bad faith or malice[.]" *Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). "It is the Judge's actions alone, not intent, that" must be considered. *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). "Although unfairness and injustice to a litigant

may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Mireles*, 502 U.S. at 10).

Still, "judicial immunity can be overcome in two sets of circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Id.* (quoting *Mireles*, 502 U.S. at 11–12) (proceeding to conclude that neither of these exceptions applied to a judge's issuance of a bench warrant).

### *Section 1983*

Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law. *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'"

*Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)), *cert. denied*, 572 U.S. 1087 (2014).

"A person acts 'under color of state law' if he engages in the 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010) (quoting *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002)) (alteration omitted). "However, a state officer does not act 'under color of state law' if he 'pursues personal objectives without using or misusing the power granted to him by the state to achieve the personal aim.'" *Id.* (quoting *Moya*, 291 F.3d at 861). This is true of judges acting as private citizens, even when the things they do involve the judicial system, *see, e.g.*, *Washington v. Atmos Energy Corp.*, No. 07-50296, 2007 WL 2493492, at *1 (5th Cir. Sept. 4, 2007) (per curiam) (concluding that a judge "did not act under color of law when he filed a criminal complaint as a private individual"), or when their actions involve the trappings of their office but they do not "intend[] to use [their] judicial powers" or "us[e their] office to magnify the impact of [their] private action." *Tierney v. Vahle*, 304 F.3d 734, 741 (7th Cir. 2002) (concluding that a judge's use of his official stationary was not enough to render the sending of a recommendation letter an action taken under color of law).

To state a § 1983 claim against LeBlanc in her official capacity, the allegations in the amended complaint must satisfy the elements required to establish state liability. This is because § 1983 claims asserted against officers in their official capacities are really claims against the government entity. *Goodman v. Harris Cty.*,

13

571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial capacity suits are really suits against the governmental entity[.]"); *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) ("In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued . . . [t]he official-capacity claims and the claims against the governmental entity essentially merge.").

*Defamation, Section 1983, and the Fourteenth Amendment's Due Process Clause.*

In *Paul v. Davis*, the Supreme Court rejected two premises that might otherwise offer Taylor relief.  424 U.S. 693 (1976).  First, the Court concluded that an official's violation of a state defamation law cannot, in and of itself, provide the basis for a Section 1983 suit based on a violation of the Due Process Clause.  *Id.* at 699–700.  Explaining that the plaintiff "apparently believe[d] that the Fourteenth Amendment's Due Process Clause should *ex propio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor," the Court reasoned that "such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States."  *Id.* at 700–01.  Noting an earlier plurality opinion's observation that a "[v]iolation of local law does not necessarily mean that federal rights have been invaded," it proceeded to reject the premise outright.  *Id.* (quoting *Screws v. United States*, 325 U.S. 91, 108–09 (1945)).

Next, the Court held that a claim of defamation and consequential reputational damage, or stigma, does not implicate a right protected by the Fourteenth Amendment and is accordingly not actionable under Section 1983.  *Id.* at 712; *see also Davis v. City of Aransas Pass*, 605 F. App'x 429, 430 (5th Cir. 2015) (per curiam) ("A plaintiff's claim of defamation by a state actor, standing alone and apart from any other government action against him, does not implicate a constitutionally protected interest under the Fourteenth Amendment").  Specifically, the Court held that an "interest in reputation . . . is neither 'liberty' or 'property' guaranteed against state deprivation without due process of law." *Paul*, 424 U.S. at 712.  It reasoned, therefore, that the defendants' "defamatory publications, however seriously they may have harmed [the plaintiff's] reputation," were not a violation of the Fourteenth Amendment and Section 1983.  *Id.*

"Following [*Paul*], [the Fifth Circuit has] consistently required plaintiffs alleging that the defamatory statements of a government official operated to deprive them of a protected liberty interest to satisfy what has sometimes been referred to as the 'stigma plus infringement' test." *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) (citing *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 701–02 (5th Cir. 1991); *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995)).  "[F]or a statement to be sufficiently stigmatizing to satisfy the first prong of the test, the statement must be both false and assert some serious wrongdoing on the part of the plaintiff." *Id.* (citations omitted).  In order to satisfy the second prong, a plaintiff must "allege the deprivation of a protected interest." *Id.*  And "[n]either harm to

reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries." *Id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 233–35 (1991)).

## IV.

### Taylor's Federal Claims

At bottom, LeBlanc argues that Taylor's claims fail as a matter of law because "defamation cannot provide the . . . basis for a Section 1983 claim" and Taylor "alleges no loss of a constitutionally protected liberty or property interest which would except his claims from" that rule.[57]

LeBlanc points out that, assuming *arguendo* that LeBlanc's reference to Taylor as a 'dirty cop' satisfies the 'stigma' prong of the test articulated in *Vander Zee*, Taylor has not alleged any deprivation of a protected interest, rendering the second prong of the test insurmountable.[58]

LeBlanc argues alternatively that, assuming Taylor's claim satisfies the test set forth in *Vander Zee*, it fails because LeBlanc's sending of text messages to Prejean was not an action taken under color of state law, a requirement of a Section 1983 claim.[59]

Taylor does not argue that his claim satisfies the requirements of *Paul* as articulated in *Vander Zee*; instead, he argues that the "position . . . supported by the

---

[57] R. Doc. No. 74-1, at 1–2.
[58] *Id.* at 10 (citing *Vander Zee*, 73 F.3d at 1369).
[59] *Id.* at 14.

*Paul* case . . . is absolutely incorrect[.]"[60]  According to Taylor, this case "should be assessed using the standards applied in the case *Harris v. Harvey*."[61]

In support of that notion, Taylor points to perceived factual and legal similarities between the instant matter and that case.  He notes that the defendant judge in that matter also argued that the defamation claims against him were not actionable under Section 1983 pursuant to *Paul* and that the Seventh Circuit rejected that contention.[62]  Adding that the Seventh Circuit distinguished *Paul* as "basically a libel suit," he argues that, like the plaintiff in *Harris*, he was subjected to a "racially motivated campaign to *discredit and damage*" him.[63]  In support of this contention, he cites (1) the bench warrant hearing, (2) LeBlanc's email to Sheriff Falcon, (3) LeBlanc's text messages to Prejean, and (4) LeBlanc's representation of his child's mother in custody proceedings.[64]

Turning to LeBlanc's argument that her actions were not taken under state law, Taylor offers a varied response.  First, he acknowledges that LeBlanc's representation of his child's mother was not an act "under color of state law," but argues that it is relevant to show LeBlanc's motives.[65]  Next, he argues that the issuance of the bench warrant was "done under the 'color of law'" as it occurred while LeBlanc "was sitting on the bench as an elected District Court Judge."[66]

---

[60] R. Doc. No. 75, at 6–7.
[61] *Id.* at 12 (referencing *Harris v. Harvey*, 605 F.2d 330 (7th Cir. 1979)).
[62] *Id.* at 7 (citing *Harris*, 605 F.2d at 330).
[63] *Id.* at 7–8.
[64] *Id.* at 8–9.
[65] *Id.* at 3–4.
[66] *Id.* at 6.

Turning to the text messages LeBlanc sent Prejean, Taylor suggests the matter is a close call, explaining that "I guess the question will be, where is the true demarcation point from when Ms. LeBlanc was a judge during her communications with [Prejean] and when were her communications deemed private with [Prejean]."[67] He goes on to argue that both the professional relationship between Prejean and LeBlanc and the fact that LeBlanc was married to someone other than Prejean at the time she sent the text messages weigh in favor of a conclusion that the text messages were sent 'under color of state law.'[68]

Both of Taylor's arguments miss the mark. Despite the supposed factual similarity between the instant matter and *Harris*,[69] the claims raised are easily

---

[67] *Id.*

[68] *Id.* Taylor concludes this argument by explaining that "[i]t appears that this is why the publication of the subject text messages by the media appears to have gone unpunished by Ms. LeBlanc." *Id.* The Court does not understand this argument.

[69] The Court notes that the allegations against LeBlanc, while serious and largely undisputed, fall well short of the conduct of the defendant judge in *Harris*. In that case, the defendant judge "urged [the district attorney] to have a complaint sworn out against [the plaintiff]," told a police officer "he was going to get that 'black bastard,'" engaged in a campaign to force plaintiff's attorneys and friends to disassociate from him, threatened witnesses with prosecution for perjury when they failed to incriminate the plaintiff, and issued a warrant for plaintiff's arrest which he proceeded to read over the radio along with a press release prepared by the district attorney. 605 F.2d at 333–34. He then "attempted to have the Chief of Police suspend or fire" the plaintiff or, at a minimum "be forced to take a lie detector test." *Id.* at 334. He then commented publicly on the merits of the charges against the plaintiff and called him "a fixer, a briber, and a sycophant" before submitting "an affidavit in a legal proceeding making racial and derogatory remarks about" him. *Id.* He also "met with officials of the Wisconsin Attorney General's office and threatened to accuse plaintiff of bribery, ticket-fixing, and other illegal activities in the public press unless the Attorney General 'would do something about'" him. *Id.* This is just a sampling of the relevant allegations.

18

distinguishable.  The *Harris* plaintiff's claims sounded in both due process *and* equal protection.  605 F.2d at 333.  And the Seventh Circuit distinguished the case from *Paul* (escaping its rule, which dooms Taylor's claims) by noting that *Paul* "presented no equal protection issue."  *Id.* at 338.  Accordingly, *Harris* offers the Court no reason to think that *Paul* and its Fifth Circuit progeny like *Vander Zee* are not controlling where the only claim raised sounds in due process.[70]

Vander Zee made clear that "[n]either harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries"—at least for purposes of *Paul* analysis.  73 F.3d at 1369.  The Fifth Circuit recently reiterated that rule and concluded that "secondary harms resulting from [an allegedly defamatory act] . . . fail[] to show a due process violation under the stigma-plus test."  *Does 1–7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019) (citing *Vander Zee*, 73 F.3d at 1369).

---

As explained *infra*, *Harris* is inapposite for legal reasons, rendering the factual distinction irrelevant.  But the Seventh Circuit did explain in reaching its decision that it "realize[d] that the types of injuries claimed in this case may often result from ordinary defamation" but that "the ongoing campaign to have plaintiff relieved of his job, which was motivated by racial animus and carried out under color of law, distinguishes this case from ordinary defamation cases."  *Id.* at 338 n.9.  And LeBlanc's only actions that might, liberally, be described as part of such an effort were her email to Sheriff Falcon and possibly the bench warrant hearing and text messages to Prejean, though neither of those is clear cut.  That is a far cry short of the judge's campaign in *Harris*.

[70] Of course, the Seventh Circuit's opinion in *Harris* could not overrule or abrogate *Paul*, a Supreme Court case.  Nor can its persuasive value, assuming it has some, overcome the binding authority of *Vander Zee*, a published Fifth Circuit opinion.

Taylor does not allege anything other than secondary harms.  He argues that LeBlanc's "actions . . . were harmful to [his] reputation and employment."[71]  The closest any of his allegations come to alleging a negative impact on his job with Assumption Parish is his claim that he was reassigned from narcotics to patrol because of LeBlanc.  But he offers the Court nothing it could conceivably use to conclude that he had a protected interest in his particular assignment.

But even if Taylor could satisfy *Paul* and *Vander Zee* on some set of allegations, the 'color of state law' requirement and judicial immunity would still, combined, merit dismissal as a matter of law.

Taylor is correct that LeBlanc's issuance of a bench warrant and holding of a hearing, as well as the comments she made during the hearing, were taken under color of state law.  LeBlanc was a state officer carrying out the duties of her position. That is more than enough.  But, *as Taylor concedes*, judicial immunity bars any claim based on LeBlanc's conduct at the hearing, whether motivated by malicious intent or not.  *See Mireles*, 502 U.S. at 11.  So, even assuming those actions might be useful evidence of LeBlanc's intent down the road, they cannot form the basis of the claim or of LeBlanc's liability.

As for the text messages:  LeBlanc concedes they do not implicate judicial immunity.  But Taylor's argument that their sending was an action taken under color of state law is simply unpersuasive.  The amended complaint and attached *Advocate* article make clear that these were text messages sent by a jealous ex-lover.  Taylor

---

[71] R. Doc. No. 75, at 12.

has offered no precedent to support the proposition that *all communications* between state officials and individuals with whom they interact in their official capacity are made 'under color of state law.'  And Taylor's reference to the fact that LeBlanc was married at the time she sent the messages to Prejean seems irrelevant.  LeBlanc was also married when she engaged in her affair with Prejean.  Does that mean that every communication between the two of them during the affair was an official act?  That cannot be.  Accordingly, any injury based on the subsequent publication of those messages cannot form the basis of Taylor's claim.

That leaves Taylor with only LeBlanc's email to Sheriff Falcon on which to rely.  But Taylor explicitly alleges that (1) Sheriff Falcon explicitly rejected the premise of LeBlanc's email; (2) LeBlanc herself explicitly rescinded her criticism of Taylor in a subsequent email; and (3) following LeBlanc's recission of her criticism, "it was felt that all was fine with the . . . parties."[72]  Setting aside the already-identified fatal deficiencies with Taylor's claim, what injury can he possibly trace to the email based on those allegations?

As explained, accepting Taylor's non-conclusory allegations as true, the Court finds he has failed to state a viable Section 1983 claim for a violation of his due process rights protected by the Fourteenth Amendment.  Taylor has already amended his complaint numerous times and has not asked the Court for leave to amend again.  Accordingly, the Court will dismiss the claim set forth in the amended complaint's first two counts with prejudice.  *See United States ex rel. Jamison v. Del-Jen, Inc.,*

---

[72] R. Doc. No. 73, at 5 ¶¶ 26–28.

747 F. App'x 216, 221 (5th Cir. 2018) (per curiam) (noting that Federal Rule of Civil Procedure 15(a) "only 'applies where plaintiffs expressly request[] to amend'") (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)); *McClaine v. Boeing Co.*, 544 F. App'x 474, 477 (5th Cir. 2013) ("A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals.") (quoting *Willard*, 336 F.3d at 387); *see also Stringer v. Alben*, 89 F. App'x 449, 452–53 (5th Cir. 2004) (finding district court did not err by entering judgment without allowing plaintiff to amend complaint where the plaintiff "did not request leave to amend his complaint in his reply brief" or by motion).

### Taylor's State Law Defamation Claim

Only Taylor's state law defamation claim remains.  A district court may decline to exercise supplemental jurisdiction over a state law claim if the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  When all federal claims have been dismissed, a district court has "wide discretion" in deciding whether to exercise jurisdiction over remaining state law claims.  *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999).  In the Fifth Circuit, the "general rule is to dismiss state law claims when the federal claims to which they are pendent are dismissed."  *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).  Courts in the Fifth Circuit also consider judicial economy, convenience, fairness, and comity.  *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).  These factors, as well as the statutory factors set out in § 1367(c), weigh in favor of

dismissing the Louisiana state law claim, without prejudice, so that Taylor may assert this claim in a state court.

"[D]eference in this case with respect to the state law issue[s] promotes the important interest of comity to state courts" and "encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Bitte v. EMC Mortg. Corp.*, No. 07-9273, 2009 WL 1950911, at *2 (E.D. La. July 1, 2009) (Africk, J.) (citations omitted) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  Furthermore, the litigation in this case is still in its early stages so the parties will not be prejudiced.  *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) (noting that when federal claims are eliminated at an "early stage" of the litigation, "the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction").

Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claim.

## V.

Accepting the facts alleged by Taylor as true, the Court finds that he has failed to state a claim for relief.  That LeBlanc's actions were detestable does not in and of itself afford Taylor a viable claim.  Accordingly,

**IT IS ORDERED** that Taylor's federal claim based on a violation of his due process rights is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Taylor's state-law defamation claim is **DISMISSED WITHOUT PREJUDICE** to it being timely asserted in a state court proceeding.

New Orleans, Louisiana, August 19, 2021.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**